# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

ERIC A. JONES,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-3049-MWB

**REPORT AND
RECOMMENDATION**

---

Plaintiff Eric Jones seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Jones contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## I. BACKGROUND

Jones was born in 1968, has a GED and attended about six months of college. AR 80. He has past relevant work as a caregiver and a computer troubleshooting technician. AR 81, 96. He applied for SSI on November 9, 2011, alleging a disability onset date of August 24, 2007. AR 200. He alleged disability due to an aneurysm, stroke, depression, weakness, obesity, diabetes, mental health issues, personality disorder, back problems and high blood pressure. AR 82, 136.

Jones' application was denied initially and upon reconsideration. AR 136-40, 145-48. Jones then requested a hearing before an Administrative Law Judge (ALJ). On June 13, 2013, ALJ John E. Sandbothe conducted the hearing, at which Jones and a vocational expert (VE) testified. AR 76-109. The ALJ issued a decision denying Jones' claim on June 24, 2013. AR 55-57. The ALJ found that Jones was unable to perform past relevant work. AR 69-70. However, the ALJ determined that there was other work Jones could perform, such as small products assembler, cleaner/housekeeper and folder. AR 71.

Jones then sought review of the ALJ's decision by the Appeals Council. AR 53. The Appeals Council granted the request for review but issued a decision on June 20, 2014, in which it denied Jones' claim. AR 10-16. The Appeals Council's decision stands as the final decision of the Commissioner. AR 10; 20 C.F.R. § 416.1481.

Jones filed a complaint (Doc. No. 3) in this Court on August 29, 2014, seeking review of the Commissioner's decision. He then filed an amended complaint (Doc. No. 5) on October 3, 2015. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues and the matter is now fully submitted.


## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual

2

lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 416.972(a)-(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); *see also* 20 C.F.R. §§ 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id*. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id*. § 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id*. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id*. §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v.*

*Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 416.935.

## III.    THE APPEALS COUNCIL'S FINDINGS

The Appeals Council made the following findings:[1]

    (1)    The claimant has not engaged in substantial gainful activity since November 3, 2011, the application date (20 CFR 416.971 *et seq.*).

    (2)    The claimant has the following severe impairments: depression; anxiety; cerebrovascular accident status-post stroke; obesity; insulin dependent diabetes mellitus (20 CFR 416.920(c)).

---

[1] The Appeals Council adopted the ALJ's findings 1 through 3 and 5 through 10. AR 15. The Appeals Council did not adopt the ALJ's finding 4 but, instead, replaced it with its own finding 11. *Id.* The Appeals Council took this action, presumably, because an important portion of the ALJ's finding 4 appears to have been inadvertently deleted from the ALJ's decision. AR 15-16, 61-62. The Appeals Council then added its own findings 12 through 14. AR 16.

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4) None (see note 1, *supra*).

(5) The claimant is unable to perform any past relevant work (20 CFR 416.965).

(6) The claimant was born on November 14, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).

(7) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

(8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant gas transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2.

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

(10) The claimant has not been under a disability, as defined in the Social Security Act, from November 3, 2011, the date the application was filed (20 CFR 416.920(g)).

(11) The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except he is limited to occasional postural maneuvers; simple, routine, repetitive work; no contact with the general public; and must have a regular work pace.

(12) If the claimant had the capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

(13) The Appeals Council adopts the testimony of the vocational expert at the hearing. Although the claimant's exertional and non-exertional impairments do not allow him to perform the full range of light work, using Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that the claimant could perform, such as a small products assemble, cleaner/housekeeper, and a folder (Finding 9).

(14) The claimant is not "disabled" as defined in the Social Security Act at any time from November 3, 2011, the date of filing, through June 24, 2013, the date of the Administrative Law Judge's decision.

AR 15-16, 60-71.


## IV.   THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits

without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789

(8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.  DISCUSSION

Jones argues the Appeals Council's decision is flawed for two reasons:

1.     The ALJ and the Appeals Council failed to fully develop the record by (a) not obtaining a psychological consultative evaluation, (b) failing to provide the physical consultative examiner with Jones' medical records and (c) failing to obtain work-related limitations.

2.     The ALJ and the Appeals Council failed to properly evaluate Jones' subjective allegations.

I will address these arguments separately below.

### A.     Development of the Record

#### 1.     Applicable Standards

An obligation to obtain additional medical evidence can arise because of the ALJ's duty to develop the record.  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case").  "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."  *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010).  The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped."  *Stormo*, 377 F.3d at 806.

Generally, a consultative examination will not be ordered until every reasonable effort has been made to obtain evidence from a claimant's own medical sources.  20 C.F.R. § 416.912(e).  The regulations do not require a consultative examination for every alleged impairment.  *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).  However,

a consultative examination may be ordered "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 416.919a. Examples include: (a) when the additional evidence needed is not contained in the records of the claimant's medical sources, (b) when the evidence that may have been available from a treating source can no longer be obtained for reasons beyond the claimant's control, (c) when the evidence needed is highly technical or specialized medical evidence that is not available from the claimant's treating source, or (d) when there is an indication of a change in the claimant's condition and the current severity of the impairment is not established. *Id.*

A consultative examining physician is not required to review all medical records for his or her opinion to be entitled to substantial weight. *See Cook v. Astrue*, 629 F. Supp. 2d 925, 933-34 (W.D. Mo. 2009); *see also Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111 (N.D. Iowa 2012) (holding that the "ALJ was also entitled to assign significant weight to the opinions from the state agency medical consultants despite the fact that they did not review all the medical records. . . ."); *Spencer v. Colvin*, No. 5:14–CV–352–REW, 2015 WL 4621882, at *10 (E.D. Ky. July 30, 2015) (holding that the consultative examiner's lack of an MRI from the record did not prohibit her from basing opinions on her own examination and assessment).

Where, as here, a denial of benefits is based on a finding at Step Five that the claimant has the RFC to perform other jobs that exist in the national economy, that finding normally should be supported by the opinion of a treating or examining physician. *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000). However, the lack of such an opinion does not automatically require remand. A Step Five denial may be affirmed without the opinion of a treating or examining source if the record nonetheless contains sufficient evidence to support the RFC determination. *Barrows v. Colvin*, No. C 13–4087, 2015 WL 1510159, at *3 (N.D. Iowa March 31, 2015) (citing *Hattig v. Colvin*, No. C. 12–4092, 2013 WL 6511866, at *11 (N.D. Iowa Dec. 12, 2013)). Thus, if other

medical evidence clearly establishes the claimant's RFC to perform other work and function in the workplace, then the opinion of a treating or examining doctor is not necessary for the ALJ to determine RFC. *Barrows*, 2015 WL 150159, at *3.

### 2. Analysis

#### a. Was a Psychological Consultative Examination Necessary?

Here, the ALJ ordered a physical consultative examination but not a psychological consultative examination. Jones contends that this was error. And, indeed, *Nevland* teaches that "[t]he opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." 204 F.3d at 858. At the same time, however, "*Nevland* does not compel remand in every case that lacks a medical opinion from a treating physician." *Figgins v. Colvin*, No. C13–3022–MWB, 2014 WL 1686821, at *9 (N.D. Iowa Apr. 29, 2014). The question is whether the record, even without such opinion evidence, contains sufficient medical evidence to support the ALJ's findings. *Id.* at *9-10; *see also Agan v. Astrue,* 922 F. Supp. 2d 730, 755-56 (N.D. Iowa 2013).

Here, I agree with the Commissioner that the record contains sufficient medical evidence concerning Jones' psychological impairments to support the Appeals Council's mental RFC determination. The record includes treatment notes from Monte Bernhagen, M.D., Jones' treating psychiatrist, AR 65-66, 336, 338-40, 360, 406, 409, 419, along with treatment notes from numerous other providers. AR 64-67, 366, 399, 446-47, 451-54, 499-505. As the Appeals Council found, these records include findings that reflect only moderate mental limitations. AR 15. Jones repeatedly informed his treating providers that he did not have neurological problems or feelings of depression. AR 435-36, 446-447, 451-552, 457-59, 461-62.

On August 31, 2011, Dr. Bernhagen evaluated Jones and assigned a Global Assessment of Functioning (GAF) score of 60, which corresponds to only a moderate

11

degree of impairment.[2]  AR 340.  During an evaluation at Community Health Center in April 2013, Jones' stated he experienced no depression or lack of pleasure.  AR 446-54; 457-64.  On May 10, 2013, a nurse practitioner examined Jones and assessed a GAF score of 55, again suggesting only moderate impairment.  AR 502.[3]

In addition this evidence, a state agency psychologist, Beverly Westra, Ph.D., reviewed records and provided a mental RFC assessment on December 9, 2011.  AR 118-19.  She reported that Jones' was moderately limited in his abilities to (a) maintain attention and concentration for extended periods, (b) work in coordination with or in proximity to others without being distracted by them, (c) complete a normal workday and workweek without interruptions psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (d) interact appropriately with the public, (e) accept instructions and respond appropriately to criticism from supervisors, (f) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  AR 118-19.  Within this assessment she opined that although Jones was easily frustrated, this did "not preclude all work like activity."  *Id.*

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations.  *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed.) (DSM–IV).  A GAF score of 51–60 indicates the individual has moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  *Id.*

[3] The record reflects that on July 31, 2013, Jones told Lisa Chase, FNP, that he was experiencing depression and a lack of a desire to do anything.  AR 512.  However, this discussion occurred after the relevant time period, as the ALJ's decision was issued June 24, 2013.  *See, e.g.*, 20 C.F.R. § 416.1470(b) ("the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing"); *see also* AR 15.

Another state agency psychologist, Philip Laughlin, Ph.D., examined Jones' mental RFC and affirmed Dr. Westra's findings. AR 133.

Like *Figgins*, this is not a case in which the record contains no medical evidence concerning Jones' impairments. *Figgins*, 2014 WL 1686821 at \*9. Instead, the record contains substantial, contemporaneous medical evidence indicating that Jones had no more than moderate mental health impairments. The ALJ and the Appeals Council properly relied on that evidence, along with the opinions of the state agency consultants, in making mental RFC findings. Neither the ALJ nor the Appeals Council had a duty to further develop the record by obtaining an opinion from a treating or examining source. I find that the Appeals Council's mental RFC findings are supported by substantial evidence on the record as a whole.

### b.     Was the Physical Consultative Examiner's Opinion Flawed?

Next, Jones argues that the findings reported by Joseph Latella, D.O., a consultative physical examiner, were flawed because Dr. Latella (a) did not review all of Jones' records and (b) did not report work-related limitations. The Commission contends that neither of these alleged deficiencies required the ALJ or the Appeals Council to discount Dr. Latella's opinion.

### i.     Review of Medical Records

Jones notes that Dr. Latella was asked to complete an evaluation, a range of motion chart and to describe Jones' physical RFC in light of his history of aneurysm, stroke, back problems and high blood pressure. Doc. No. 11 at 12 (citing AR 348). Referencing the same page of the record, Jones states: "Jones's medical records were not provided to Dr. Latella." *Id.* While that proposition may be true, it is not evident from the cited page. In any event, the Commissioner does not argue otherwise. Thus, I will assume

that Jones is correct and that Dr. Latella reviewed no medical records in the course of conducting his consultative examination.

This leads to the question of whether the ALJ and the Appeal Council were required to discount Dr. Latella's opinion on grounds that he did not review medical records. When evaluating the opinions of non-examining sources, an ALJ "evaluate[s] the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." 20 C.F.R. § 416.927(c)(3). The weight given to their opinions "depend[s] on the degree to which they provide supporting explanations for their opinions." *Id.* While opinions of non-examining sources do not constitute substantial evidence, *see Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003), an ALJ does not commit reversible error when he or she undertakes an independent review of the medical evidence and does not rely solely on the opinion of a non-examining source in determining a claimant's RFC. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Jones contends that it is well-established Eighth Circuit law that "when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner." Doc. No. 11 at 13. In support of this proposition, Jones cites just one Eighth Circuit case, *Gavin v. Heckler*, 811 F.2d 1195 (8th Cir. 1987). *Id.* In *Gavin*, the claimant was sent for a psychiatric evaluation and the resulting report noted "no psychiatric impairment in [the claimant's] ability to perform daily activities." 811 F.2d at 1200. However, the examiner concluded his report by noting that he had been given no medical information to review and stating: "I have insufficient information upon which to base a specific diagnosis." *Id.* In light of the examiner's express statement that he had been given "insufficient information," the court held that the examiner's opinion was "seriously undermine[d]." *Id.*

14

It is a stretch to argue that *Gavin* establishes a blanket rule that a consultative examiner's findings must be discredited if that examiner did not have access to all medical records. As the Commissioner notes, at least one other district court in this circuit has rejected such a bright-line rule. In *Cook v. Astrue*, 629 F. Supp. 2d 925 (W.D. Mo. 2009), the court stated:

> Claimant's argument that Dr. Demorlis did not review claimant's medical records as part of his consultive examination does not prevent the ALJ from relying on the consultive medical examinations Dr. Demorlis conducted and his corresponding findings. Although it would seem to be better practice to forward medical records to the physician conducting the consultive examination, this court is not willing to make a per se rule that failure to send medical records to be reviewed for consultive examinations automatically results in the opinion of that doctor not being entitled to substantial weight.

*Id.* at 932-33. I agree. The absence of records that may be relevant to the purpose of the evaluation is a factor to consider when deciding the weight to which the evaluation is entitled. When, as in *Gavin*, the examining source affirmatively references the lack of records and declares that insufficient information exists, it is a significant factor. In other cases, however, the fact that an examiner was not provided with medical records may have little or no impact on the validity of the examiner's particular findings.

Here, Dr. Latella was not asked to offer opinions about Jones' medical history but, instead, was retained to conduct a physical examination and testing to determinate Jones' physical capabilities at the time of the examination. AR 348. Based on his evaluation, Dr. Latella reported that Jones had normal extremities, normal range of motion, no neurological defects, and no residual effects from his stroke. AR 349-52. It is not obvious, by any means, that Jones' medical records were material to the issues Dr. Latella was asked to address.

Indeed, Jones does not explain how having access to those records might have affected Dr. Latella's findings. As the Commissioner points out, the examination took

place in January 2012, just two months after the adjudicated period began. AR 351. Many of the treatment notes prior to that examination addressed Jones' mental health, not his physical condition. AR 328, 330, 335, 341-342, 418-422, 424, 426, 429-430. Jones has not shown that the failure to provide medical records to Dr. Latella caused Dr. Latella's findings to be unreliable. I find that the ALJ and the Appeals Council properly considered those findings, as well as the record as a whole, in assessing Jones' physical RFC.

### ii. Work-related Limitations

Finally, Jones' argues that the ALJ failed to fully develop the record by not obtaining sufficient work-related limitations from a treating or examining source. He acknowledges that Dr. Latella reported some work-related limitations (cannot crawl, kneel or climb stairs) but contends that additional work-related limitations, both mental and physical, were necessary. The Commissioner disagrees, arguing that the record contains substantial evidence supporting the Appeal's Council's RFC determination.

With regard to mental limitations, I have already determined that the medical evidence of record supports Appeals Council's mental RFC findings. *See* Section V(A)(2)(a), *supra*. As for Jones' physical RFC, the combination of Dr. Latella's findings and other evidence and opinions of record was sufficient to allow the ALJ and the Appeals Council to make findings without obtaining additional evidence. As noted above, Dr. Latella examined Jones and found that he had normal extremities, normal range of motion, no neurological defects, and no residual effects from his stroke. AR 349-52. Two state agency medical consultants reviewed records and provided reports that included detailed findings as to Jones' work-related limitations. AR 115-18, 129-31. In addition, the ALJ discussed Jones' own reports and testimony as to his daily activities and impairments. AR 62-63, 68-69.

No crucial issue was undeveloped. The evidence of record allowed the ALJ and the Appeals Council to assess Jones' RFC and determine whether he was disabled. As such, I find that neither the ALJ nor the Appeals Council failed to fulfill their duty to fully develop the record.

## B.    Subjective Allegations

Jones argues that the ALJ and the Appeals Council failed to evaluate his subjective allegations properly within the framework established by the Commissioner's regulations and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). He also contends that his wife's testimony should have been give more weight. The Commissioner disagrees and argues that the ALJ, whose findings were then adopted by the Appeals Council, provided good reasons supported by substantial evidence for these credibility findings.

### 1.    The Credibility Analysis

In determining a claimant's credibility, the ALJ must consider:

    (1)    the claimant's daily activities;

    (2)    the duration, intensity, and frequency of pain;

    (3)    the precipitating and aggravating factors;

    (4)    the dosage, effectiveness, and side effects of medication; and

    (5)    any functional restrictions.

*Polaski*, 739 F.2d at 1322; see also 20 C.F.R. § 416.929(c)(3). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)).

While an ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, the lack of such evidence is a factor the ALJ may consider. *Halverson*, 600 F.3d at 931-32; *Ford v. Astrue*, 518 F.3d 979,

982 (8th Cir. 2008). A claimant's credibility is "primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Thus, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id*. The ALJ need not discuss each *Polaski* factor if the ALJ "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Here, the ALJ considered statements from Jones, his physicians, a consultative examiner and testimony from Jones' wife concerning his symptoms and impairments. The ALJ acknowledged that Jones experienced depression, anxiety, pain and discomfort, but found that Jones' statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the RFC assessment. AR 67-68. The ALJ gave the following reasons for this credibility finding:

1. Jones' activities of daily living are inconsistent with disability as he reported shopping, going out alone, driving a car and helping with light housework.

2. Jones sought limited medical treatment, considering his allegations of disabling physical symptoms and limitations is inconsistent with disability.

3. Jones was not compliant with treatment recommendations.

4. Jones worked only sporadically prior to the alleged disability onset date, which raises questions as to whether his continuing unemployment is actually due to medical impairments.

5. Jones' subjective complaints were not consistent with the medical evidence.

6.    Mental status findings of record indicate Jones' mood was generally euthymic, and his concentration, attention, and memory were intact.

AR 68-69.

In considering daily activities, the ALJ noted that Jones testified to preparing meals, driving a car, going out alone, going shopping in stores weekly and spending time with others on a daily basis. AR 69. Jones testified that he has to use the cart at the grocery store as he cannot walk the aisles and he cannot carry the groceries up his stairs when he gets home. AR 91-92. The household chores Jones testified to include putting away dishes and light groceries such as boxes of crackers. AR 94. The Eighth Circuit has held that "cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *see also Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (concluding "daily activities [such] as getting up, eating, reading, cleaning the house, making the bed and doing dishes with the help of [a spouse], making meals, visiting with friends, and occasionally shopping and running errands" are inconsistent with a claimant's subjective complaints of disabling pain). It was not error for the ALJ to conclude that Jones' activities of daily living are inconsistent with claims of disabling pain.

With regard to medical treatment, Jones testified that while living in Iowa the previous three years he was able to access medical care when needed. AR 83. Although the record indicates Jones suffered a stroke in 2007, there is no indication that he sought any type of long-term, ongoing treatment for the effects of that stroke. AR 63. The ALJ was permitted to find that Jones did not have a need for such treatment and therefore, to discount Jones' subjective complaints concerning disabling pain and conditions. *See, e.g.*, *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failure to seek medical assistance contradicts subjective complaints); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("ALJ may discount subjective complaints based on a failure to pursue

regular medical treatment"). On one occasion when Jones did seek treatment for stroke-related symptoms, Dr. Comstock noted that he was alert, had no cranial nerve deficit or sensory deficit and that he left the hospital against medical advice. AR 64, 369, 488. Indeed, it was the lack of any record of ongoing treatment that caused the ALJ to order a consultative physical exam. AR 63.

The ALJ also noted that Jones did not comply with his treatment regimen. *See Guilliams*, 393 F.3d at 802 (a failure to follow a recommended course of treatment weighs against credibility); *see also Dodson v. Astrue*, No. 6:07-cv-6049, 2008 WL 2783454, At *5 (W.D. Ark. July 17, 2008) (plaintiff did not maintain a diabetic diet or monitor her blood glucose levels). The record reflects that Jones did not exercise, follow his meal plan or watch his sugar intake as recommended by his diabetes treatment plan. AR 373, 440, 447, 455, 458, 473, 476, 479. While Jones argues that the ALJ erred by addressing Jones' failure to lose weight, as weight loss is not necessarily the goal of diabetes treatment, the ALJ's findings were based primarily on Jones' failure of Jones to follow his diabetic meal plan and exercise recommendations in accordance with his diabetes treatment plan. AR 63-65, 68. Finally, while it may be true, as Jones argues, that exercise is not always an option for those who are extremely obesity, this does not explain his failure to comply with other recommendations.

The ALJ was also entitled to give weight to the fact that Jones worked only sporadically before his alleged disability onset date. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (sporadic work record reflecting relatively low earnings and multiple years with no reported earnings allowed ALJ to find claimant lacked credibility). Here Jones' highest earnings for a single year were under $10,000. AR 91. The ALJ pointed out that Jones' sporadic work history raised questions as to whether his continued unemployment was actually due to medical impairments. AR 68.

Next, the lack of supporting medical evidence is a factor an ALJ may consider, along with other factors, in assessing credibility. *Mouser*, 545 F.3d at 638. Statements

about pain or other symptoms, without more, will not establish disability. 20 C.F.R. § 416.929(a). Here, I cannot conclude that the ALJ erred in finding that the medical evidence does not fully support Jones' subjective allegations. Jones did not have any nerve defects, sensory defects or severely disabling effects as a result of his stroke. AR 351, 367. During several exams, Jones denied any neurological problems or depression, did not show diabetic complications and his blood sugars were found to be controlled by medication. AR 446-48, 451-52, 461-62, 473, 561-62; *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) ("if an impairment can be controlled through medication it cannot be considered disabling"). Jones also had a normal range of motion, gait and extremity strength. AR 350, 399-400, 449, 521, 558, 563. Although Jones stated that he had to use a cane to get around, the record contains only one medical evaluation suggesting he had a limp. AR 521. Additionally, although Jones' application noted back problems, he denied back pain during medical evaluations. AR 447, 452, 458, 462.

As for mental impairments, Jones told Dr. Bernhagen on December 6, 2011, that he was no longer feeling depressed. AR 419. During various examinations with Dr. Bernhagen it was noted that Jones had a eurthymic mood. AR 424. After seeing Dr. Bernhagen in July 2012, Jones did not seek further psychiatric treatment until April 2013, nearly nine months later. AR 66, 406, 503. Although Jones' claims he suffered from mental health impairments throughout this time, the medical findings reflect negative depression screenings and denials by Jones of any psychiatric complaints. AR 419, 424, 435-36, 446-447, 451-552, 457-59, 461-62.[4]

---

[4] Of course, symptom-free periods that may negate the finding of a physical disability do not necessarily compel such a finding when the alleged disability is a mental disorder. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (citing *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C. Cir. 1987)). Here, the ALJ did not rely exclusively on a period of time without symptoms to discredit Jones' subjective allegations.

In short, I find that all of the reasons provided by the ALJ for discrediting Jones' subjective allegations are good reasons that are supported by substantial evidence on the record as a whole. As such, I must defer to the ALJ's credibility determination. *Guilliams*, 393 F.3d at 801.

The ALJ separately addressed the credibility of Susan Jones, claimant's wife. AR 69. An ALJ may discount third-party testimony on the same grounds as he or she discounts a claimant's own testimony. *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998). If an ALJ provides good reasons for discrediting a claimant's testimony, the ALJ is not required to address similar testimony by a third-party witness. *See, e.g.*, Buckner v. Astrue, 646 F.3d 549, 559–60 (8th Cir. 2011) (ALJ's failure to explicitly address observations of claimant's girlfriend did not require remand when the observations were identical to claimant's statements and ALJ discounted credibility of claimant). An ALJ may also discount corroborating testimony if the person has a financial interest in the outcome of the case. *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).

Here the ALJ specifically cited the relationship between Jones and his wife in discrediting her testimony and also referenced the same reasons provided for discrediting Jones' own testimony. AR 69. The ALJ noted that Mrs. Jones was not medically trained and would not be able "to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms." *Ash v. Astrue*, No. 2:10CV00043, 2011 WL 2936348 at 12 (E.D. Mo. July 19, 2011) (Third-party witness were not medically trained to make exacting clinical determinations and could be discounted by the ALJ). I find the ALJ properly discounted the testimony of Susan Jones.

## C.    *Obesity*

Finally, Jones argues that the ALJ failed to correctly assess his obesity in conjunction with his other impairments. While obesity is no longer a listed impairment,

SSR 02-01p provides that an ALJ must assess the impact that a claimant's obesity may have on the severity of his or her functional limitations. SSR 02-01p. The diagnosis of obesity does not automatically require the finding of disability. *See, e.g.*, *Foshee v. Colvin*, No. 3:12–CV–3126, 2013 WL 6669391 at *3 (W.D. Ark. Dec. 13, 2013).

Here the ALJ explicitly stated that he considered SSR 02-01p and Jones' obesity in conjunction with the claimant's other established impairments and that all such limitations have been incorporated into the RFC. AR 62. While Jones argues that the ALJ should have provided a detailed explanation as to how obesity affected the ALJ's findings, the Eighth Circuit has held that a reference to obesity is sufficient to avoid reversal. *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009). Because the ALJ referenced Jones' obesity and explicitly stated that it was taken into account when determining his RFC, I find the ALJ properly considered obesity in evaluating Jones' claim.[5]

## VI. CONCLUSION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Jones was not disabled be **affirmed** and that judgment be entered against Jones and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the

---

[5] Additionally, I note that Jones' initial application did not include obesity as a condition that limited his ability to work. AR 224. While he mentioned his obesity during the hearing, he did not describe any particular functional limitations that were caused or exacerbated by his weight. AR 82. It is appropriate for an ALJ to discount the effects of obesity when a claimant does not allege functional limitations in the application or during the hearing. *See, e.g.*, *Foshee*, 2013 WL 66691, at *3.

record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 561, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 30th day of October, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE