**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

ERIC A. JONES,

  Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

  Defendant.

No. C 14-3049-MWB

**MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION**

_____

**TABLE OF CONTENTS**

*I.* *INTRODUCTION*......................................................................................*2*

*II.* *LEGAL ANALYSIS* ..................................................................................*3*
 *A.* *Standard Of Review* .......................................................................*3*
 *B.* *Review Of Jones's Objections* .........................................................*5*
  *1.* *Lack of substantial medical evidence*......................................*5*
   *a.* *Arguments of the parties* ............................................*5*
   *b.* *The challenged part of the Report And Recommendation*......................................................*5*
   *c.* *Analysis* ....................................................................*8*
  *2.* *Inadequacy of the* **Polaski** *analysis* ........................................*9*
   *a.* *Requirements of the* **Polaski** *analysis* .........................*9*
   *b.* *The alleged flaws in the analysis*..............................*10*
    *i.* *Lack of work-related limitations from an appropriate source*.................................*10*
    *ii.* *Failure to consider the effects of Jones's obesity*.......................................................*11*
    *iii.* *The magistrate judge's failure to mention fatigue* ............................................*12*
    *iv.* *Failure to consider Jones's inability to sit, stand, and walk*.......................................*13*
    *v.* *Failure to recognize Jones's limited access to specialized treatment* ........................*14*

      *vi.* *Improper analysis of third-party statements* ................................................. *16*
   *c.* ***Summary regarding the* Polaski *analysis*** .................... *17*
**III. CONCLUSION** ........................................................................... *18*

## I. INTRODUCTION

This is an action for judicial review by plaintiff Eric A. Jones of a final decision of the Commissioner of Social Security (the Commissioner) denying Jones's application for Title XVI supplemental security income benefits (SSI) under the Social Security Act, 42 U.S.C. § 401 *et seq*. In a Report And Recommendation (docket no. 16), filed October 30, 2015, then-United States Magistrate Judge Leonard T. Strand recommended that I affirm the Commissioner's determination that Jones was not disabled during the relevant period and enter judgment against Jones and in favor of the Commissioner.

On November 13, 2015, Jones filed his Objections To Magistrate Judge's Report And Recommendation (Objections) (docket no. 17). Jones objects to two of Judge Strand's conclusions: (1) that the ALJ's decision is supported by substantial medical evidence, because Jones argues that the ALJ failed to obtain work-related limitations from a treating or examining source; and (2) that the ALJ's *Polaski* analysis is adequate, where Jones asserts that the analysis was flawed in several respects. On November 25, 2015, the Commissioner filed a Response To Plaintiff's Objections To The United States Magistrate Judge's Report And Recommendation (docket no. 18) asserting that the challenged conclusions are all properly supported by the record.

Thus, I must review Judge Strand's Report And Recommendation in light of Jones's Objections.

## II. LEGAL ANALYSIS
### A. *Standard Of Review*

The applicable statute expressly provides for *de novo* review by a district judge of a magistrate judge's report and recommendation *when objections are made*, as follows:

> *A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.* A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006) (emphasis added); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). In other words, the specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation. In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990).[1] The statutory

---

[1] The Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise,

3

standard does not preclude *de novo* review by the district court in other circumstances, however. Rather, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a de novo or any other standard." *Id*.²

When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not

---

*Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Here, Jones is represented by counsel, so the first basis for liberal construction does not apply, and I find that the objections are sufficiently specific to invoke *de novo* review.

² *In the absence of an objection*, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review only when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). The Eighth Circuit Court of Appeals has indicated, however, that a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the Advisory Committee's Note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record").

4

hold an evidentiary hearing or oral arguments on Jones's Complaint. Rather, he considered only the parties' written submissions, and I have done the same.

I will review Judge Strand's Report And Recommendations with these standards in mind.

### B. Review Of Jones's Objections

As noted, above, Jones makes two objections to Judge Strand's Report And Recommendation, although his second objection has numerous subparts. I will consider these objections in turn.

#### 1. Lack of substantial medical evidence
##### a. Arguments of the parties

Jones's first objection is to Judge Strand's conclusion that the ALJ's decision is supported by substantial medical evidence, because Jones argues that the ALJ failed to obtain work-related limitations from a treating or examining source. He argues that, as a rule, the Commissioner's decision lacks adequate support, without opinion evidence from a treating or examining source, citing *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). He argues that Dr. Latella, a consulting examining physician, did an examination and report without receiving any of his medical records, which would have disclosed more clearly his diabetes, diabetic neuropathy, and other impairments.

In response, the Commissioner argues that there is no bright line rule that a consultative examiner's findings must be discredited if that examiner did not have access to all of the claimant's medical records. The Commissioner also points out that Jones has failed to cite any records that would have changed Dr. Latella's opinion.

##### b. The challenged part of the Report And Recommendation

Judge Strand explained,

> A consultative examining physician is not required to review all medical records for his or her opinion to be entitled to substantial weight. *See Cook v. Astrue*, 629 F. Supp. 2d 925, 933-34 (W.D. Mo. 2009); *see also Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111 (N.D. Iowa 2012) (holding that the "ALJ was also entitled to assign significant weight to the opinions from the state agency medical consultants despite the fact that they did not review all the medical records. . . ."); *Spencer v. Colvin*, No. 5:14– CV–352–REW, 2015 WL 4621882, at *10 (E.D. Ky. July 30, 2015) (holding that the consultative examiner's lack of an MRI from the record did not prohibit her from basing opinions on her own examination and assessment).
>
> Where, as here, a denial of benefits is based on a finding at Step Five that the claimant has the RFC to perform other jobs that exist in the national economy, that finding normally should be supported by the opinion of a treating or examining physician. *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000). However, the lack of such an opinion does not automatically require remand. A Step Five denial may be affirmed without the opinion of a treating or examining source if the record nonetheless contains sufficient evidence to support the RFC determination. *Barrows v. Colvin*, No. C 13–4087, 2015 WL 1510159, at *3 (N.D. Iowa March 31, 2015) (citing *Hattig v. Colvin*, No. C. 12–4092, 2013 WL 6511866, at *11 (N.D. Iowa Dec. 12, 2013)). Thus, if other medical evidence clearly establishes the claimant's RFC to perform other work and function in the workplace, then the opinion of a treating or examining doctor is not necessary for the ALJ to determine RFC. *Barrows*, 2015 WL 150159, at *3.

Report And Recommendation at 9-10.

Judge Strand also agreed with the conclusion of the court in *Cook v. Astrue*, 629 F. Supp. 2d 925 (W.D. Mo. 2009), that there is no bright line or *per se* rule that an

examining consultant's lack of access to medical records automatically requires that the examiner's opinions be given less than substantial weight. *Id*. at 15. More specifically, he explained,

> The absence of records that may be relevant to the purpose of the evaluation is a factor to consider when deciding the weight to which the evaluation is entitled. When, as in *Gavin [v. Heckler*, 811 F.2d 1195 (8th Cir. 1987)], the examining source affirmatively references the lack of records and declares that insufficient information exists, it is a significant factor. In other cases, however, the fact that an examiner was not provided with medical records may have little or no impact on the validity of the examiner's particular findings.
>
> Here, Dr. Latella was not asked to offer opinions about Jones' medical history but, instead, was retained to conduct a physical examination and testing to determin[e] Jones' physical capabilities at the time of the examination. AR 348. Based on his evaluation, Dr. Latella reported that Jones had normal extremities, normal range of motion, no neurological defects, and no residual effects from his stroke. AR 349-52. It is not obvious, by any means, that Jones' medical records were material to the issues Dr. Latella was asked to address.
>
> Indeed, Jones does not explain how having access to those records might have affected Dr. Latella's findings. As the Commissioner points out, the examination took place in January 2012, just two months after the adjudicated period began. AR 351. Many of the treatment notes prior to that examination addressed Jones' mental health, not his physical condition. AR 328, 330, 335, 341-342, 418-422, 424, 426, 429-430. Jones has not shown that the failure to provide medical records to Dr. Latella caused Dr. Latella's findings to be unreliable. I find that the ALJ and the Appeals Council properly considered those findings, as well as the record as a whole, in assessing Jones' physical RFC.

Report And Recommendation at 15-16.

### c. *Analysis*

Upon *de novo* review, 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I agree with Judge Strand's conclusions. First, contrary to the suggestion in Jones's objections, Dr. Latella *was* an examining source, who conducted a physical examination and testing to determine Jones's physical capabilities at the time of the examination and who, based on his evaluation, reported that Jones had normal extremities, normal range of motion, no neurological defects, and no residual effects from his stroke. Administrative Record (docket no. 9), 348-52.

Also, there simply is no *per se* rule that an examining physician must be provided with, review, and consider the claimant's medical records to render an opinion of any value. I agree with the court in *Cook* that forwarding the claimant's medical records to a physician conducting a consultative examination "would seem to be better practice." *See Cook*, 629 F. Supp. 2d at 932. I also acknowledge that my colleague, then-Chief Judge Donald E. O'Brien, "indicate[d] to the Secretary that it should always provide all medical records to any physician from whom he solicits an opinion regarding any social security case." *Mateer v. Bowen*, 702 F. Supp. 220, 222 (S.D. Iowa 1988). Nevertheless, Jones has not shown that applicable statutes, regulations, or decisions of the Eighth Circuit Court of Appeals impose a mandatory requirement that consulting examiners have access to all of a claimant's records.

Nor does the fact that Dr. Latella examined Jones only once necessarily make it inappropriate for the ALJ to rely on his conclusions. *But see, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (stating that the opinion of a consulting physician who examined the claimant only once or not at all ordinarily does not constitute substantial evidence). Rather, the weight to be given the opinions of *any* physicians "depend[s] on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Furthermore, the ALJ's determination of a claimant's

8

residual functional capacity (RFC) must ultimately be "based on *all of the relevant evidence*," including: (1) medical records; (2) observations of treating physicians and others; and (3) the claimant's own description of his limitations. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (emphasis added); *see also Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC."). In this case, there was most definitely "some medical evidence" in the record from medical professionals as to Jones's "ability to function in the workplace" sufficient to support the ALJ's RFC determination, as amended by the Appeals Council. *See Cox v. Barnhardt*, 471 F.3d 902, 907 (8th Cir. 2006).

Finally, as the Commissioner argues, and Judge Strand found, "Jones does not explain how having access to those records might have affected Dr. Latella's findings." Report And Recommendation 16. Although Jones now contends that his diabetes, diabetic neuropathy, and perhaps other impairments may not have been as obvious to Dr. Latella as his obesity, Jones does not explain how knowledge of those other impairments would have changed the results of Dr. Latella's *examination*.

Jones's first objection is overruled.

### 2. *Inadequacy of the* Polaski *analysis*

Jones also objects to Judge Strand's conclusion that the ALJ's *Polaski* analysis is adequate, where Jones asserts that the analysis was flawed in several respects. I will consider the alleged flaws, at least briefly, in turn. First, however, I will summarize the requirements of the *Polaski* analysis.

#### a. *Requirements of the* Polaski *analysis*

As the Eighth Circuit Court of Appeals recently explained,

> "[C]redibility is primarily a matter for the ALJ to decide."
> *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir.2003)
> (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th

9

> Cir.2001)). "An ALJ … may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir.2007) (quotation and citation omitted). In addition to the "objective medical basis" that should support the subjective testimony of disabling pain, this court takes into account "all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). *Polaski* outlined a list of five factors which this court and ALJs must take into account when judging the credibility of testimony on subjective pain: "1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; 5. functional restrictions." *Id*.

*Wright v. Colvin*, 789 F.3d 847, 853-54 (8th Cir. 2015). The Eighth Circuit Court of Appeals has also identified various daily activities that it "has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking." *Id*. at 854. Other factors that the ALJ may properly consider are a claimant's "refusal to take pain medication and his refusal to seek out even conservative treatments such as physical therapy" and an extended period—in that case, eight months—during which the claimant "sought no medical care." *Id*.

### b. *The alleged flaws in the analysis*

#### i. *Lack of work-related limitations from an appropriate source*

The first flaw that Jones has identified in the *Polaski* analysis is that there are no specific work-related limitations from a treating or examining source who has reviewed all of his medical records, so that the ALJ's conclusion was tantamount to the ALJ

"playing doctor." The Commissioner dismisses this objection as a "retread" of Jones's objection to the failure to provide Dr. Latella with his medical records.

Upon *de novo* review, 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I reiterate that the ALJ's determination of a claimant's RFC must ultimately be "based on *all of the relevant evidence*," including: (1) medical records; (2) observations of treating physicians and others; and (3) the claimant's own description of his limitations. *See McKinney*, 228 F.3d at 863 (emphasis added); *see also Perks*, 687 F.3d at 1092. In this case, there was most definitely "some medical evidence" in the record from medical professionals as to Jones's "ability to function in the workplace" sufficient to support the ALJ's RFC determination, as amended by the Appeals Council. *See Cox*, 471 F.3d at 907. Indeed, I find that the ALJ made an exhaustive review of Jones's medical records and subjective complaints to determine his limitations. *See* ALJ's Decision, Administrative Record at 62-69.

This part of this objection is overruled.

### ii. *Failure to consider the effects of Jones's obesity*

Next, Jones contends that his extreme obesity, in light of his other medical conditions, made his subjective allegations credible. Upon *de novo* review, 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I find the ALJ expressly noted,

> In addition, obesity is documented in the record. The undersigned has given consideration to Social Security Ruling 02-1p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairment

11

> identified. The claimant's obesity has been considered in combination with the claimant's other established impairments and all limitations thereof have been incorporated into the residual functional capacity detailed above [and amended by the Appeals Council.]

Administrative Record at 62 (ALJ's Decision) and 15-16 (Appeals Council's amendment of incomplete RFC statement by replacing the ALJ's finding ¶ 4 with new ¶ 11). The ALJ then repeatedly noted and considered Jones's obesity, as it appeared in his medical records. *See* Administrative Record at 62-69. I agree with Judge Strand that "the Eighth Circuit [Court of Appeals] has held that a reference to obesity is sufficient to avoid reversal." Report And Recommendation at 23 (citing *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009)); *Heino*, 578 F.3d at 881 (stating, "We have held that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal" (citation omitted), and noting that "the ALJ made numerous references on the record to [the claimant's] obesity," which the court concluded showed "that the ALJ considered [the claimant's] obesity when evaluating her claim," so that reversal was not required).

This part of this objection is also overruled.

### iii. *The magistrate judge's failure to mention fatigue*

Jones also objects to the Report And Recommendation on the ground that Judge Strand failed even to mention Jones's fatigue, despite his assertion in his Reply Brief that the ALJ had ignored his consistent complaints of fatigue. Upon *de novo* review, 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I find the ALJ repeatedly noted and considered Jones's fatigue or conditions related to fatigue, as it appeared in his medical records. *See* Administrative Record at 62 (discussing sleep apnea); 63 (discussing complaints that Jones could not walk more than a block and a half or two blocks without a progressively worsening limp and was unable to stand for more than five minutes,

before he needed to brace himself against a wall, or he would fall); *id*. (discussing excessive sleeping); 64 (noting a complaint of fatigue in March of 2012 and other indications of problems sleeping); 65 (noting a complaint of fatigue and sleep disturbance in December of 2012). Although the ALJ did not cite any requirement that he consider fatigue, like SSR 02-1p, which requires him to consider obesity, and Jones has not pointed to any, I conclude that the ALJ's repeated references to Jones's fatigue mean that the ALJ adequately considered Jones's fatigue when evaluating his claim, so that reversal is not required. *Cf. Heino*, 578 F.3d at 881.

This part of this objection is also overruled.

### *iv. Failure to consider Jones's inability to sit, stand, and walk*

Jones also objects to the Report And Recommendation, because it affirms the ALJ's and Appeals Council's conclusion that he "could stand and walk 6 hours a day," citing the Administrative Record at 15 and 61, but they at least tacitly accepted that he needed a motorized cart when shopping. This objection collapses on simple factual error: The ALJ and the Appeals Council *never* suggested that Jones could stand and walk 6 hours a day. The ALJ's truncated statement of Jones's RFC, at finding 4 on page 61 of the Administrative Record, which appears to have inadvertently omitted part of the finding, and the Appeals Council's more complete statement of Jones's RFC at finding 11 on page 15 of the Administrative Record, both refer to "light work as defined in 20 C.F.R. [§] 416.967(b)," with additional limitations expressly imposed by the Appeals Council and apparent in the RFC as formulated by the ALJ in his discussion. The pertinent regulation defines "light work" as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good*

13

> *deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (emphasis added). There is no mention of standing or walking for 6 hours a day in this regulation, and even the reference to "a good deal of walking or standing" is stated *with an alternative* of "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. Nothing in the ALJ's Decision or the Appeals Council's Decision states or suggests that Jones's RFC included an ability to stand or walk for 6 hours a day. The further limitations expressly stated by the Appeals Council included a limitation to "occasional postural maneuvers," effectively ruling out frequent or extended standing or walking. Jones also argues that nothing in the activities identified by the ALJ or the Appeals Council reflects the ability to work 8 hours a day, 5 days a week, on a sustained basis, but Jones has failed to cite any part of the record that precludes it.

This part of this objection is also overruled.

### v. *Failure to recognize Jones's limited access to specialized treatment*

Jones argues that it was improper for the ALJ to make negative credibility findings about his subjective complaints, based on his failure to follow treatment recommendations, without recognizing his limited ability to obtain specialized treatment, either because of the prohibitive travel involved or the lack of insurance, as required by SSR 96-7p. He also contends that the ALJ's assumptions are contrary to the existing medical record. Again, upon *de novo* review, 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S.

at 154, I find the ALJ properly discounted Jones's subjective complaints, because of his refusal to follow treatment directions, or to seek out conservative treatments within his insurance coverage or personal abilities, or to seek care at all for extended periods. *Wright*, 789 F.3d at 854 (explaining that the ALJ may properly consider a claimant's "refusal to take pain medication and his refusal to seek out even conservative treatments such as physical therapy" and an extended period—in that case, eight months—during which the claimant "sought no medical care"). The ALJ indicated that he was aware of SSR 96-7p, *see* Administrative Record at 62, and expressly noted that Jones "reported he was unable to follow-up with [a sleep study] appointment due to financial issues." *Id*. at 64. These facts show that the ALJ adequately considered Jones's ability to follow treatment recommendations because of his financial circumstances, when evaluating his claim, so that reversal is not required. *Cf. Heino*, 578 F.3d at 881.

The ALJ also noted Jones's non-compliance with his diabetic treatment, which did not impose any apparent financial burdens on Jones. *See* Administrative Record at 63 ("[T]reatment notes continually indicated the claimant was noncompliant with his diabetic treatment."), 64 ("He was not following his diabetic diet, continuing to eat large bowls of ice crea[m] despite having high sugar readings."), and 65 ("[H]e admitted to ongoing noncompliance with his diabetic regimen, noting that he was eating what he wanted and was not carb counting or watching his diet."). Furthermore, the ALJ noted inconsistencies between Jones's complaints and examination results, such as when he presented for emergency treatment in June 2012 for symptoms of right-sided weakness, dizziness, falling, and dragging feet, but left against medical advice after numerous tests were essentially normal. *Id*. at 64.

This part of this objection is also overruled.

####     vi.    *Improper analysis of third-party statements*

The last part of this objection is Jones's contention that the analysis of third-party statements in the Report And Recommendation is inconsistent with the whole concept of a *Polaski* credibility analysis and with *Henn v. Colvin*, 967 F. Supp. 2d 1263, 1284 (N.D. Iowa 2013). The ALJ discredited the reports of Jones's wife, Susan, about the nature and degree of his function, which the ALJ noted were similar to Jones's. The ALJ explained,

> [T]he report of Mrs. Jones does not establish that the claimant is disabled. Since Mrs. Jones is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided is questionable. Moreover, by virtue of the relationship with the claimant, Mrs. Jones cannot be considered a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the third party report because it, like the claimant's allegations, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case. For the same reasons as discussed above regarding the claimant's reported functioning from his submitted function report and testimony, the undersigned has afforded the testimony and reports of Mrs. Jones little weight, as they were significantly inconsistent with the objective medical findings of record.

Administrative Record at 69.

Upon *de novo* review, 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I reiterate my position, in *Henn*, that lack of medical training is not a good reason to discount third-party function reports. *Henn*, 967 F. Supp. 2d at 1284. I explained that this was so,

because doing so ignores the purpose of third-party function reports: I pointed out that 20 C.F.R. § 404.1529 recognizes that symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence, and, consequently, requires that the Commissioner "carefully consider any other information [the claimant] may submit about [his] symptoms." *Id*. To the extent that the ALJ relied on Mrs. Jones's lack of medical training, I believe that the ALJ erred.

Nevertheless, I do not find that reversal is appropriate, because, in *Henn*, I found that a relative's affection for the claimant could warrant discounting the statements of that relative, *see id*., so that it was not improper for the ALJ to discount Mrs. Jones's statements on this ground. Furthermore, what the ALJ found was most important in his discounting of Mrs. Jones's statements was their inconsistency with the preponderance of the medical evidence, which is plainly an appropriate basis for doing so. *Wright*, 789 F.3d at 853-54. Also, unlike the ALJ in *Henn*, the ALJ in Jones's case explained what those inconsistencies were by cross referencing his earlier conclusions about the inconsistencies between Jones's own statements and the medical evidence. *Compare Henn*, 967 F. Supp. 2d at 1284 (pointing out that the ALJ failed to set forth any of the inconsistencies between third-party statements and the record to support his finding of inconsistencies).

Thus, this part of this objection is also overruled.

### c. *Summary regarding the* **Polaski** *analysis*

Because I have overruled all of the parts of Jones's objection to Judge Strand's conclusion that the ALJ's *Polaski* analysis is adequate, I conclude that the *Polaski* analysis was adequate. Thus, this is a case in which there is no reason to disturb the ALJ's credibility findings, which are "'primarily a matter for the ALJ to decide.'" *Wright*, 789 F.3d at 853 (quoting *Edwards*, 304 F.3d at 966). Thus, Jones's second objection is overruled in its entirety.

## *III.* *CONCLUSION*

Upon the foregoing,

1. Jones's November 13, 2015, Objections To Magistrate Judge's Report And Recommendation (Objections) (docket no. 17) are **overruled**;

2. I **accept** then-United States Magistrate Judge Leonard T. Strand's October 30, 2015, Report And Recommendation (docket no. 16), **without modification**, *see* 28 U.S.C. § 636(b)(1) (2006;

3. Pursuant to Judge Strand's recommendations and my review,

    a. The Commissioner's determination that Jones was not disabled is **affirmed**; and

    b. Judgment shall enter against Jones and in favor of the Commissioner.

**IT IS SO ORDERED**.

**DATED** this 7th day of March, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA